UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                    Case No. 8:22-cr-188-VMC-AAS

JOSEPH WALKER
_____/

REPORT AND RECOMMENDATION

Defendant Joseph Walker moves to suppress physical evidence seized during a search of his residence. (Doc. 30). For the reasons below, it is **RECOMMENDED** that Defendant Walker's motion to suppress be **DENIED**.

I.   PROCEDURAL BACKGROUND

On May 25, 2022, Defendant Walker was charged by indictment with knowingly possessing a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 1). Defendant Walker entered a plea of not guilty. (Doc. 13).

Defendant Walker moves to suppress "any and all evidence obtained following an [] illegal detention, and search of his residence located at 4520 Crystal Road in Venice Florida." (Doc. 30). The United States responded in opposition to Defendant Walker's motion. (Doc. 35). Both parties submitted supplemental briefing. (Docs. 47, 51).

The undersigned held an evidentiary hearing on Defendant Walker's

1

motion to suppress on September 13, 2022. (Doc. 40). At the hearing, the United States presented the testimony of Florida Department of Corrections Probation Officer Tomas Shinall, Florida Department of Corrections Probation Officer Christina Calabro, and Special Agent Konstantinos Balos. (Doc. 41). Defendant Walker presented the testimony of his wife, Abigail Walker. (Doc. 42).

## II.   FACTUAL BACKGROUND[1]

On January 27, 2021, Sarasota Circuit Court Judge Charles E. Roberts placed Defendant Walker on two years of community control followed by two years of drug offender probation and adjudicated Defendant Walker guilty of one count of aggravated assault with a deadly weapon. (Doc. 41, Ex. 1). Officer Shinall testified that community control is a more intense form of supervision than probation.

On June 19, 2021, Defendant Walker received a trespass warning from the Sarasota County Sheriff's Office for aggressively confronting a loss prevention officer at Home Depot. (Doc. 41, Ex. 3). Defendant Walker told the law enforcement if Defendant Walker's hands weren't full, he "would have punched [the officer]." (*Id.*).

---

[1] This background contains information from the parties' briefs and the evidentiary hearing.

On July 7, 2021, Defendant Walker submitted a urine sample as required by his supervision orders. On July 13, 2021, a laboratory confirmed the sample was positive for methamphetamine. (Doc. 41, Ex. 4).

On July 14, 2021, Dr. Dan Busch reported to the Florida Department of Corrections that Defendant Walker physically threatened him. (Doc. 41, Ex. 5). Specifically, Dr. Busch reported he hired Defendant Walker to perform repairs on his property. (*Id.*). After a financial dispute, Defendant Walker threatened and harassed Dr. Busch, his wife, his insurance agent, and other business associates. (*Id.*). Dr. Busch reported he questioned his safety because he learned Defendant Walker was carrying a firearm and talking about "getting [Dr. Busch]." (*Id.*).

On July 15, 2021, Officers Shinall and Calabro arrived at Defendant Walker's residence at approximately 5:30 p.m. to conduct a search. Defendant Walker and Ms. Walker were inside the residence when the officers arrived. Defendant Walker exited the residence and Officer Shinall placed Defendant Walker in handcuffs. Two Sarasota County deputies stood outside the residence with Defendant Walker during the search. After securing the couple's dogs, Ms. Walker remained outside the residence but was not handcuffed.

During the search Officers Shinall and Calabro observed an open safe

with keys inside the lock on the floor of the Walkers' shared bedroom. (*See* Doc. 41, Ex. 6). Officers Shinall and Calabro testified to seeing inside the safe firearms and ammunition, which were photographed and seized. (*See* Doc. 41, Ex. 6). In the same bedroom, Officers Shinall and Calabro also observed drug paraphernalia, including baggies with suspected methamphetamine, pipes, torch lighters, and scales.

## III.  ANALYSIS

Defendant Walker requests the court suppress the items seized during the search of his residence, which he argues was an illegal search. (Doc 30). The Fourth Amendment of the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the movant, Defendant Walker "bears the burdens of proof and persuasion" that his Fourth Amendment rights have been violated. *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

The Fourth Amendment's protections against unreasonable searches applies to those on probation. *United States v. Wasser*, 586 Fed. App'x 501, 504 (11th Cir. 2014) (citing *Owens v. Kelley*, 681 F.2d 1362, 1367 (11th Cir. 1982)). However, a probationer's rights and expectations of privacy are diminished and may be "subject to limitations to which ordinary citizens are free." *Id*. Such is

especially true where a probationer is subject to special conditions of probation.[2] *United States v. Knights*, 534 U.S. 112, 119–20 (2001) (stating that a probation order containing a waiver for the warrant and probable cause requirement further diminishes a probationer's expectations of privacy.). These limitations are permissible because the state maintains a compelling interest in limiting the liberties of those who have committed crimes to effectuate rehabilitation and protect its citizenry. *Owens v. Kelley*, 681 F.2d 1362, 1367 (11th Cir. 1982).

The Supreme Court held in *United States v. Knights* that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." 534 U.S. at 121. In other words, a probation officer merely needs to have reasonable suspicion. *Id*. Reasonable suspicion exists where there is a high probability of criminal conduct such that an intrusion into the probationer's privacy is merited. *Id*.

---

[2] In addition to conditions to probation, an exception to the search warrant requirement exists where a situation presents "special needs" making the disposition of the warrant and probable cause requirement "impracticable." *Griffin v. Washington*, 483 U.S. 868, 873–74 (1987) (citations omitted). In such instances, only reasonable suspicion is needed to search. *See id*. A state probation system falls into the category of "special needs." *Id*. Therefore, law enforcement may conduct a search of the residence of a defendant on probation without a warrant with reasonable suspicion. *United States v. Knights*, 534 U.S. 112, 119 (2001).

5

In determining whether an officer had reasonable suspicion, courts must evaluate the totality of the circumstances to see if a particularized and objective basis for suspecting legal wrongdoing existed. *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005). Law enforcement must be able to point to specific and articulable facts and cannot rely on mere suspicion or a hunch to show reasonable suspicion. *Id.* Thus, the court must consider the totality of the circumstances in assessing whether Officers Shinall and Calabro had a particularized basis for suspected wrongdoing on Defendant Walker's part and whether that suspicion was reasonable.

Because of Defendant Walker's status as a probationer, law enforcement only needed reasonable suspicion to engage in the search of his residence.[3] *Knights*, 534 U.S. at 119. Defendant Walker violated his probation terms based on his positive urinalysis. (Doc. 41, Ex. 4). This provided the probation officers with specific and articulable facts supporting a reasonable suspicion of illegal drug activity in Defendant Walker's residence. In addition, the Sarasota County trespass report contained information that Defendant Walker was acting aggressively and making threats to injure another person. (Doc. 41, Ex.

---

[3] The reasonable suspicion standard extends to searches of probationer's residence even if the probationer is not subject to a special condition waiving the requirement for warrants and probable cause. See *United States v. Yuknavich*, 419 F.3d 1302, 1309–11 (11th Cir. 2005); *see also United States v. Gomes*, 279 Fed App'x 861, 870 (11th Cir. 2008).

6

3). Further, Dr. Busch's complaint provided information that Defendant Walker possessed a firearm and made violent statements. (Doc. 41, Ex. 5). These circumstances supported a reasonable suspicion that criminal activity was occurring in Defendant Walker's residence and therefore the search was lawful.

There are factual discrepancies about whether the safe was locked when the officers arrived and whether Ms. Walker had sole access to the safe. Ms. Walker testified the safe was locked and the safe's key was on the table in another room when the officers entered the residence. In addition, Ms. Walker testified she had sole possession of the safe because she had the key, and the safe was on her side of the shared bedroom. Officers Shinall and Calabro both testified the safe was open and visible from immediate entry into the bedroom.

When considering a motion to suppress, the witness's credibility is for the court to determine. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (accepting the trial court's choice of whom to believe because the finder of fact personally observes the witness's testimony and is in a better position to assess witness credibility). Here, although sequestered during each other's testimony, Officer Shinall's testimony and Calabro's testimony were consistent throughout the hearing and unwavering. Officers Shinall and Calabro appeared credible in their presence and demeanor. Ms. Walker's

demeanor was defensive, and her testimony was inconsistent. For example, Ms. Walker testified the safe's key was on a table immediately inside the front door of the residence. However, Ms. Walker told Special Agent Balos the safe's key was "at the bottom of the closet somewhere." (*See* Doc. 41, Exs. 7, 8). Ms. Walker also testified she was the owner of the safe because it is located on her "side" of the bedroom. Yet, Ms. Walker testified the drug paraphernalia located on the nightstand on the same side of the bedroom was not hers.

In weighing the witnesses' credibility, the undersigned finds the testimony of Officers Shinall and Calabro more credible than the testimony of Ms. Walker. In any event, when law enforcement is lawfully searching an area for items like firearms and drugs, they are authorized "to break open locked containers which may contain the objects of the search." *United States v. Martinez*, 949 F.2d 1117, 1120 (11th Cir. 1992); *see also United States v. Harris*, 635 F. App'x 760, 767 (11th Cir. 2015) ("[A]s there was reasonable suspicion to search Harris's pool house for controlled substances, and the safe was inside the pool house and drugs could easily fit in the safe, the agents had the authority to break open the safe to access its contents."). Here, the officers' search of the safe was permissible in the absence of a warrant because they had reasonable suspicion of the existence of drugs and firearms inside. Defendant Walker was lawfully placed in handcuffs outside the residence

during the search, per Department of Corrections policy.

Given the totality of the circumstances based on the trespass warning, the positive urinalysis, Dr. Busch's report, and Defendant Walker's criminal history, the undersigned recommends the court find there was a reasonable suspicion and a high probability criminal conduct (specifically, possession of drugs and firearms) was occurring at Defendant Walker's residence.

## IV.  CONCLUSION

Because law enforcement had reasonable suspicion to conduct a search of Defendant Walker's residence and the safe within that residence, it is **RECOMMENDED** that the motion to suppress (Doc. 30) be **DENIED**.

**ENTERED** in Tampa, Florida on October 17, 2022.

_____
AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file

written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.